**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CLAYTON OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 15 C 1089** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **BOARD OF EDUCATION OF THE CITY** | ) | |
| **OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Clayton Owens, lost his job as an engineer at a public high school in Chicago, where he was employed by defendant, the Board of Education of the City of Chicago ("Board"). In this lawsuit, plaintiff claims that defendant discriminated against him on the basis of age, and retaliated against him for complaining about age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Defendant has moved for summary judgment. For the following reasons, the Court grants defendant's motion.

## BACKGROUND

Plaintiff, who had been a Board employee since 1975, became the Chief Engineer assigned to Wendell Phillips Academy High School ("Phillips") in June 2012. (Def.'s LR 56.1(a)(3) Stmt. ¶ 3, ECF No. 27; *Id.*, Ex. B, Pl.'s Dep., at 12, ECF No. 27-2.) Plaintiff's job duties included supervising and performing maintenance on the school building to which he was assigned as well as its HVAC, plumbing and electrical systems. (*Id.*, ¶ 6.) Plaintiff was born in 1952. (Compl., Ex. A.)

On December 3, 2012, Martine Miller began employment with the Board as a Facilities Manager. (Def.'s LR 56.1(a)(3) Stmt., ¶ 4, ECF No. 27.) She directly supervised as many as twenty engineers, including plaintiff. (*Id.*, ¶¶ 4, 51.) Upon taking the position, she promptly met with plaintiff to discuss her expectations, which plaintiff admits were reasonable. (*Id.*, ¶ 7.)

According to plaintiff, he told Miller at their initial meeting that he was the plaintiff in a federal lawsuit pending against the Board ("the Dyett lawsuit"), in which he alleged that he suffered age and gender discrimination under the ADEA and Title VII while in his prior position at Walter H. Dyett High School. (*Id.*, Ex. B, at 45:24-48:13.) He says he brought the matter up during his meeting with Miller because he thought she should know about it as his supervisor. (*Id.*). Her response, according to plaintiff, was to ask him, "Do you think you're going to keep your job, working for the Chicago Public Schools and you're filing a lawsuit?" (*Id.*, Ex. B, at 46:12-14.) According to Miller, she never learned of the Dyett lawsuit until after plaintiff left the Board's employment. (*Id.*, ¶ 73.)

Miller states that, during the spring of 2013, she received numerous complaints about plaintiff from the staff at Phillips, including Principal Devon Horton and Director of Operations John Byrne (*id.*, ¶¶ 9-12), although plaintiff responds that Miller either never notified him of these complaints or they were baseless (Pl.'s LR 56.1(b)(3)(B) Resp., ¶¶ 9-12, ECF No. 38). Miller claims to have personally observed during the same time frame that there were numerous electrical issues at Phillips that required urgent attention, including issues related to light switches, breaker panel doors, and fire alarm panels, but plaintiff did not address them in a timely manner. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 13-16, ECF No. 27.) Miller was also aware, based on her own observations and the complaints she received from Horton and Byrne, of a number of plumbing problems at Phillips between December 2012 and June 2013, including

inoperable water fountains, toilets, sinks and faucets. (*Id.*, ¶ 17.) According to Miller, plaintiff either did not address these plumbing issues or did not do so in a timely manner. (*Id.*, ¶¶ 18-20.) Plaintiff responds that these plumbing issues were addressed (although he does not say by whom, or how promptly) prior to the time of his June 2013 review, as Miller knew from her periodic inspections of the premises. (Pl.'s LR 56.1(b)(3)(B) Resp., ¶¶ 18-20, ECF No. 38.)

On March 5, 2013, Miller sent plaintiff an email, in which she explained that she had not approved his request for vacation time because he was too far behind in his maintenance and repair work at Phillips. (Def.'s LR 56.1(a)(3) Stmt. ¶ 37, ECF No. 27; *id.*, Ex. K.) Miller explained that she believed plaintiff was not managing his time effectively, he was not accomplishing tasks in a timely manner, and he was dumping too much work on his assistant engineer, Angelica Govan. (*Id.*, Ex. K.) Miller informed plaintiff that Byrne had contacted her to complain about plaintiff's job performance, and she described a number of plumbing repairs that plaintiff had neglected to make and other tasks he had failed to accomplish despite having had ample time in which to accomplish them. (*Id.*) She wrote that she expected to see "improved performance" and she would be available to "discuss a corrective action plan." (*Id.*)

On April 22, 2013, Miller sent plaintiff another email documenting deficiencies in his job performance and informing him that she would not approve his requests for vacation time until his job performance improved. (*Id.*, ¶ 39; *id.*, Ex. L.) Miller wrote that plaintiff had been slow to inform her[1] that Phillips had received a citation from the Health Department because there was no hot water in some of the student washrooms, which Phillips was required to correct by April 22. (*Id.*, Ex. L.) Plaintiff had sought quotes on a new hot-water pump, but he had not corrected the violation by the deadline. (*Id.*) Miller wrote in her email that this was "an urgent matter that needed to be attended to," but plaintiff had not responded with any "sense of

---

[1] Plaintiff claims that he left her a voice mail promptly. (Pl.'s LR 56.1(b)(3)(B) Resp., ¶ 39, ECF No. 38.)

urgency"; he had simply waited "for a quote on a pump" when he knew there was a fast-approaching deadline imposed by the Health Department. (*Id.*) Miller also described some other lingering plumbing issues that plaintiff had not handled in a timely fashion, and she told him that "the perception at the school" was that "nothing [was] being repaired by you," and "that perception needs to change," so she recommended that plaintiff take training courses through his union in order to sharpen his skills. (*Id.*)

Plaintiff claims that in May 2013, he mentioned his pending Dyett lawsuit to Miller again, and she replied, "I think you lost your mind by filing a lawsuit and you think you're going to keep your job. You'll see what I'm talking about." (*Id.*, Ex. B, 53:06-54:24.) Miller denies saying this or ever learning of the Dyett lawsuit while plaintiff worked for the Board. (*Id.*, ¶ 73.)

By June 2013, when Miller completed her first evaluation of plaintiff's performance, she had come to believe that his "basic skill set was not up to par," and she rated him "unsatisfactory." (*Id.*, ¶ 8.) Plaintiff claims that after Miller gave plaintiff his performance evaluation, she told him either, "I told you you wasn't going to get away with that," as he paraphrased at his deposition (*id.*, Ex. B, 97:13-98:5), or, "You thought you were getting away with it. See what I'm saying?", as he paraphrased slightly differently in the declaration he submitted with his Local Rule 56.1(b)(3)(C) Statement of Additional Facts (¶ 24, ECF No. 38-3).

Plaintiff's unsatisfactory rating in June 2013 was the only one Miller gave to any of the engineers she supervised that year. (Def.'s LR 56.1(a)(3) Stmt., ECF No. 27, ¶¶ 51-52.) Of the fifteen engineers Miller supervised who were over forty, seven were rated "good," six were rated "excellent," and one was rated "outstanding," the highest rating. (*Id.*, ¶ 53.) The engineer rated "outstanding" was 55 years old at the time; plaintiff was 61. (*Id.*) The only other Chief Engineer

that Miller supervised was born in 1953, only one year after plaintiff, and he received an "excellent" rating for the 2012-2013 school year. (*Id.*, ¶ 54.) Miller was born in 1957. (*Id.*, ¶ 4.)

In some cases, Miller formally disciplined engineers she supervised. One engineer, identified as P.G., received a "formal write-up" for poor performance, including failing to fix inoperable drinking fountains and failing to change stained ceiling tiles (*id.*, Ex. C, at 148:15-149:19, ECF No. 27-3), which Miller came to notice sometime after giving her 2013 performance evaluations (Def.'s LR 56.1(a)(3) Reply, Ex. A, ECF No. 43-1). After going through the disciplinary process, which included "formal notification" and "grievance hearings," P.G. received a suspension without pay of a few days. (Def.'s LR 56.1(a)(3) Stmt., ECF No. 27, Ex. C, at 154:2-10.) He still works for the Board. (*Id.*, Ex. C, at 149:24-150:1.) He was born in 1965. (*Id.*, Ex. N at BOE 00319, ECF No. 27-4, at 67.) Another engineer, R.R., received similar discipline for an incident in which he started a fire by leaving equipment unattended—in fact, leaving the school building altogether—while he was in the middle of sanding floors. (*Id.*, Ex. C, at 150:9-151:11, 154:2-10.) A third engineer, T.P., received similar discipline for leaving his school building during working hours without permission. (*Id.*, Ex. C, at 154:12-155:12.)

The Board closed fifty schools at the end of the 2012-2013 school year, but the engineers at the shuttered schools were retained, resulting in a surplus of engineers. (*Id.*, ¶ 55.) Facing budget shortfalls for the 2013-2014 school year, the Board decided to lay off approximately twenty-five engineers in the fall of 2013. (*Id.*, ¶¶ 55-56.)

Pursuant to the collective bargaining agreement ("CBA") between the Board and plaintiff's union, in the event of a layoff, any engineers rated "unsatisfactory" are to be laid off first, regardless of seniority. (*Id.*, ¶ 57.) Plaintiff was selected as one of the engineers to be laid off in 2013 because he had been rated "unsatisfactory." (*Id.*, ¶ 58.) Miller was not aware, prior

5

to conducting her 2012-2013 performance evaluations, that the Board was going to lay off engineers in the following fall, nor was she involved in how the Board determined which particular engineers were to be laid off. (*Id.*, ¶¶ 61-62.) Following his layoff, plaintiff retired. (*Id.*, ¶ 63.)

## ANALYSIS

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court may not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Plaintiff claims that the Board discriminated against him on the basis of his age and retaliated against him for complaining about age discrimination by filing the Dyett lawsuit.

## I.   DISCRIMINATION

"The ADEA makes it unlawful for an employer to . . . discriminate against an individual 'because of such individual's age.'" *Ripberger v. Corizon, Inc.,* 773 F.3d 871, 880 (7th Cir. 2014) (quoting 29 U.S.C. § 623(a)(1)). To receive ADEA protection, employees must be forty years old or older. 29 U.S.C. § 631(a).

On a defendant's motion for summary judgment in an employment discrimination case, "the sole question that matters" is "[w]hether a reasonable juror could conclude that [the plaintiff] would have kept his job" if he did not have a protected characteristic (in this case, advanced age), "and everything else had remained the same." *Ortiz v. Werner Enters., Inc.*, No. 15-2574, 2016 WL 4411434, at *3 (7th Cir. Aug. 19, 2016); *see also Nagle v. Vill. of Calumet*

*Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII."). In answering that question, the Court must consider the evidence as a whole to determine whether, even if there is no direct admission of discrimination or other piece of evidence that is overtly damning by itself, the full evidentiary picture permits a reasonable inference that plaintiff's age caused his discharge. *Id.* at *3-4; *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

Plaintiff proceeds under the traditional burden-shifting framework created by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under that framework, to make out a *prima facie* case, plaintiff must show that he was over forty; he was meeting his employer's legitimate performance expectations; he suffered an adverse employment action; and he was treated less favorably than similarly situated individuals who were under forty or substantially younger. *See Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008). If plaintiff succeeds in making a *prima facie* case, then the burden shifts to the Board to offer a legitimate, non-discriminatory reason for the adverse action. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002). If the Board meets that requirement, the burden shifts back to plaintiff to demonstrate that the Board's proffered reason is pretextual. *See id.*

When the plaintiff and an alleged comparator are both over forty, an age difference of ten years is presumptively substantial. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001). Where the age difference is less than ten years, "the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997).

7

The Board argues that it is entitled to summary judgment for a number of reasons. First, it argues that plaintiff has not made a *prima facie* case of age discrimination because he cannot establish that he was meeting his employer's legitimate expectations, nor has he identified any valid comparators who were similarly situated but treated differently. The Board also argues that it had legitimate non-discriminatory reasons for its adverse action, and plaintiff cannot demonstrate that the Board's reasons were pretextual.

### A. *Prima Facie* Case

The facts that plaintiff argues constitute his *prima facie* case of age discrimination are essentially as follows. Plaintiff was 61 years old at the time of his unsatisfactory performance review and discharge. He was an experienced, qualified engineer who had worked for the Board for decades, and he claims that he was meeting supervisors' expectations during most of that time, leaving aside his issues with Miller and with the supervisor whose actions prompted him to file the Dyett lawsuit. He claims that the alleged instances of poor performance on which Miller purports to have based her unsatisfactory rating could not actually have supported any such rating. Addressing these alleged instances of poor performance one by one, he contends either that he was unaware of the issues that Miller believed required his attention, the issues were not actually his responsibility but someone else's, or he dealt with them appropriately by hiring an outside contractor. He argues that other engineers who had performance issues either went unpunished or they were merely disciplined, rather than given unsatisfactory reviews that might, as in plaintiff's case, directly result in their termination.

### 1. *Meeting legitimate performance expectations*

The Board argues that plaintiff cannot establish that he was meeting his employer's legitimate expectations because he has not refuted the Board's evidence of his poor performance,

much of which is backed by documentation, with anything but his own self-serving statements. To the extent the Board argues that it is entitled to summary judgment because plaintiff's evidence that he was meeting legitimate expectations comes from plaintiff alone, and that evidence is overwhelmed by the differing accounts of three others, namely Miller, Byrne and Horton, the Court disagrees. The Board argues correctly that a plaintiff cannot survive summary judgment in an employment discrimination case in which there is specific evidence of his poor performance merely by contradicting that evidence with his own general statement that he was a good, capable and diligent employee, *see Skylarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 897 (7th Cir. 2015), but that is not what plaintiff has done in this case. He has addressed each of the instances of poor performance the Board has cited in support of his unsatisfactory performance rating with specific facts. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994) ("Although general averments of adequate performance are insufficient to create a factual issue on summary judgment . . . , a plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies.").

True, it is his word against three others', and, as the Court will discuss in more detail below, his explanations are not entirely satisfying because, even if true, they do not fully undermine Miller's core concern that plaintiff's "basic skill set was not up to par." But by specifically refuting the facts on which Miller's criticisms are based, plaintiff does enough to create an issue of fact as to whether he was meeting legitimate performance expectations.

### 2. *Similarly situated employees treated differently*

The Board next argues that, although plaintiff has chosen to proceed by claiming to have been treated differently than similarly-situated individuals, he has not identified any valid comparators.

The Board argues that Govan is not a valid comparator because she was plaintiff's subordinate, whose job was to assist him. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002), *Renta v. Cty. of Cook*, No. 05 C 2995, 2011 WL 249501, at *2 (N.D. Ill. Jan. 26, 2011); *see also Pavlovic v. Bd. of Educ. for City of Chi.*, No. 11 C 00830, 2012 WL 4361432, at *6 (N.D. Ill. Sept. 21, 2012) (engineers of different grades not similarly situated). The Board's argument is valid and supported by pertinent authority, but plaintiff never addresses it, either by citing record evidence to the contrary or legal authority, so the Court assumes that the Board is correct.

But Miller supervised at least one engineer, P.G., who was thirteen years younger than plaintiff, whose deficiencies were similar to plaintiff's, and who was not terminated. Miller claims in an affidavit submitted after her deposition that she now recalls that P.G. was rated "good" in 2013 because she did not notice P.G.'s performance issues until after the 2013 review period,[2] but nevertheless, there is evidence that P.G. suffered from a "comparable set of failings," *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006), yet he was not terminated. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007) ("A single comparator will do; numerosity is not required."), *aff'd*, 553 U.S. 442 (2008). This is a close call, but the Court will assume that plaintiff has presented enough evidence to make a *prima facie* case.

### 3. *Adverse Action*

The Board concedes that there was an adverse action in this case, which it characterizes as plaintiff's receiving "an 'Unsatisfactory' rating in June 2013, which was the basis for his

---

[2] It is worth noting that on the line where P.G. was supposed to sign his 2013 review appear the handwritten words "refused to sign," which may indicate that, contrary to Miller's statements in her affidavit, she did convey to him some lack of satisfaction with his performance, even if he received a "good" rating. (*See* Def.'s LR 56.1(a)(3) Stmt., Ex. N at BOE 00319, ECF No. 27-4, at 67.)

selection for layoff." (Def.'s Mem. Supp. Summ. J., ECF No. 25-1, at 8.) Although it is certainly true that the issues of the performance rating and the layoff are intertwined because the latter is a consequence of the former, it may be misleading to conflate them, and a point of clarification is necessary.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). A layoff is certainly an adverse employment action, but a negative performance review is generally not an adverse action by itself. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442-43 (7th Cir. 1996). In particular, even if having a negative performance review on one's record makes a future adverse action more likely, as in this case, the negative review itself is not an adverse action to the extent that it is an honest, constructive attempt to improve an employee's performance. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) ("With the benefit of hindsight, it can be said that, in this case, each oral or written reprimand brought Ms. Oest closer to termination. Such a course was not an inevitable consequence of every reprimand, however; job-related criticism can prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship."), *overruled on other grounds by Ortiz*, 2016 WL 4411434, at *5. Thus, the layoff, not the unsatisfactory performance rating, is the adverse action for which defendant must provide a legitimate, non-discriminatory reason. *See, e.g., Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378-79 (7th Cir. 1995).

However, that is not to say that, in the circumstances of this case, it is irrelevant whether Miller gave plaintiff the unsatisfactory rating with discriminatory animus. If Miller gave plaintiff the unsatisfactory rating with discriminatory animus and with the *intent* to cause his

termination, then—since her review, combined with the layoff, actually resulted in plaintiff's layoff—this might[3] be a case in which the Board could be liable for laying off plaintiff based on Miller's actions. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (holding that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable")[4]; *see also id.* at 422 n.3 ("Under traditional tort law, 'intent . . . denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'") (quoting Restatement (Second) of Torts § 8A (1965)); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990).

For purposes of the present motion for summary judgment, because plaintiff has made a *prima facie* case, the Board must now (1) demonstrate that there is no genuine issue of fact as to whether there was a legitimate, non-discriminatory reason for the layoff and defeat any argument by plaintiff that the reason for the layoff was pretext; and (2) demonstrate that there is no genuine issue of fact as to whether Miller gave plaintiff the unsatisfactory rating with the intent to cause him to be laid off.

---

[3] The parties apparently agree that Miller's unsatisfactory performance rating proximately caused plaintiff's layoff, and the Court will follow suit.

[4] *Staub* concerned an army reservist's discrimination claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311, but the anti-discrimination language in USERRA is similar to the anti-discrimination language of Title VII, and courts hold that *Staub* applies generally to federal employment discrimination claims, including ADEA claims. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 604 (7th Cir. 2014) (applying *Staub* to Title VII claims); *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 949 (10th Cir. 2011) (holding that *Staub* applies to ADEA claims); *Goswami v. DePaul Univ.*, No. 12 C 7167, 2015 WL 251304, at *15 (N.D. Ill. Jan. 20, 2015) ("*Staub* applies not only in USERRA cases, but in employment discrimination cases.") (citing, *inter alia*, *Nichols*).

### B. Legitimate Non-Discriminatory Reason and Pretext

#### 1. *The Layoff*

The Board has established that it decided to lay off engineers, of whom there was a surplus due to recent school closings, in order to deal with a budget shortfall. (Def.'s LR 56.1(a)(3) Stmt., ¶¶ 55-56.) The Board's decision set in motion a purely mechanical process by which the Board's Facilities Department, pursuant to the terms of the CBA between the Board and the International Union of Operating Engineers, AFL-CIO, Local 143-143B, identified engineers rated unsatisfactory, including plaintiff, and then the Board's Talent Office sent letters to twenty-five engineers, including plaintiff, notifying them that they had been laid off. (*Id.*, ¶¶ 57-58; Ex. F, ¶¶ 10-12, 14.) This is a legitimate, non-discriminatory reason for laying off plaintiff, and plaintiff has offered no evidence or argument that it was pretextual.

#### 2. *Miller's Intent*

A reasonable jury could not conclude that Miller gave plaintiff the unsatisfactory review with the specific intent that he be included in the 2013 layoff because the evidence shows that she did not know that the Board would be laying anyone off, and, once the Board determined that a layoff was necessary, she was not involved in determining which engineers would be laid off. (*Id.*, ¶¶ 61-62.)[5] Moreover, plaintiff has not introduced or cited any evidence that Miller, who came to work for the Board in December 2012, only about seven months before she gave plaintiff the unsatisfactory rating that led to his layoff, was even generally aware that giving plaintiff an unsatisfactory rating might leave him vulnerable to a layoff.

---

[5] Plaintiff purports to deny that Miller had no involvement in determining which engineers were selected for layoff, that she was unaware the Board was going to lay off engineers, or that plaintiff would be laid off as a result of his unsatisfactory rating. (Pl.'s LR 56.1(b)(3)(B) Resp., ¶¶ 61-62, ECF No. 38.) However, he cites no evidence that Miller had any involvement in selecting engineers for layoff or that she was aware that any engineers, including plaintiff, would be laid off. His only support for his position comes from Miller's alleged statements that she thought plaintiff's Dyett lawsuit was unwise and that plaintiff received an unsatisfactory rating because he wasn't "getting away with it." (*Id.*) As the Court will discuss further below, these statements do not create a genuine issue of fact.

Even if the Court assumes that Miller was aware that, in the event of a layoff, the unsatisfactory rating she gave plaintiff might cause him to be selected for layoff, and even if it assumes that her mere awareness of that possibility might be enough to impute to the Board any discriminatory animus that may have caused her to give plaintiff an unsatisfactory rating, the evidence does not support a reasonable inference that she acted with any discriminatory animus.

First, as the Court intimated above, plaintiff attempts to refute Miller's charges of poor performance by contending either that he was unaware of the maintenance issues that Miller believed required his attention, the issues were not actually his responsibility but someone else's, or he dealt with them appropriately by hiring an outside contractor, but these responses do not directly contradict Miller's concerns with plaintiff's performance, as she expressed them at her deposition and in the emails she wrote to plaintiff in the spring of 2013. When asked directly at her deposition what deficiencies in plaintiff's performance warranted an unsatisfactory rating, Miller summarized by responding that his "basic skill set was not up to par. . . . That's it, pretty much." (*Id.*, Ex. C, at 46:18, 22, ECF No. 27-3.) She went on to explain that plaintiff did not have the skills to perform the sort of basic electrical work and plumbing that she expected an engineer to be able to perform, and, consistently with that belief, she recalls that he did not complete work in a timely manner and was forced to hire outside contractors more often than any other engineer she supervised (*id.*, ¶ 30, ECF No. 27). Plaintiff essentially admits that this criticism was valid when, in his Local Rule 56.1(b)(3)(B) Response (ECF No. 38), he responds to Miller's charges of failing to resolve certain issues by claiming that he took care of them by hiring outside contractors. This is exactly what Miller criticized him for doing, and why she recommended that he take courses through his union to sharpen his skills. Miller inferred that plaintiff did not have the skills to do the work himself from the fact that he was not completing

tasks in a timely manner (Def.'s LR 56.1(a)(3) Stmt., Ex. C, at 49:10-22, ECF No. 27-3) as well as the fact that he seemed to be hiring outside contractors more than other engineers.

This Court's concern is not the wisdom or fairness of the rating, but whether it was Miller's honest appraisal of plaintiff's performance, rather than a product of or screen for discriminatory animus. *See Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir. 1986). Simply put, the Court's only concern is whether Miller's rating is based on "a lie, specifically a phony reason." *Debs v. Ne. Ill. Univ.*, 153 F.3d 390, 396 (7th Cir. 1998) (citing *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)). Even taking as true all plaintiff's explanations for all Miller's charges of poor performance and making all reasonable inferences in his favor, his explanations do not show that the performance rating Miller gave him is based on false accusations for which discriminatory animus might be a reasonable explanation. At most, they show that Miller may have been harsh or mistaken in holding some of the building's issues against plaintiff when there may have been extenuating circumstances, but nevertheless, some of her loudest, most essential criticisms, on which the unsatisfactory rating was based, find support in undisputed facts. *See Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) ("It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was . . . a lie.") (citing *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010)).

Plaintiff points to no evidence that Miller ever made any direct admissions that she was in any way biased against older engineers or that she dealt harshly with plaintiff because he was older than other engineers, nor does he point to any ambiguous statements that might be interpreted as evidence of that sort of bias. Plaintiff's only evidence of discriminatory intent is

the evidence that one younger engineer,[6] P.G., may have had similar performance issues (although the evidence is fuzzy as to precisely what P.G.'s performance issues were and when Miller became aware of them), but P.G. did not receive an unsatisfactory review in 2013 and has not been terminated. *See Coleman*, 667 F.3d at 858 ("[C]omparator evidence can do 'double-duty' at both the prima facie and pretext stages."). The Court has assumed that this evidence, scant though it may be, is enough to state a *prima facie* case of age discrimination, but standing alone, it is not sufficient to support a reasonable inference that Miller gave plaintiff a bogus unsatisfactory performance rating with the age-based discriminatory intent to cause him to be laid off. *See Steele v. Carter*, No. 13-CV-01229 (APM), 2016 WL 3620722, at *17 (D.D.C. June 29, 2016) (weak comparator evidence was sufficient to make a *prima facie* case, but insufficient to demonstrate pretext).

As explained above, Miller had documented concerns about the adequacy of plaintiff's skill set to perform core job tasks necessary to the maintenance of his building's systems, and not only does plaintiff fail to effectively rebut the evidence of these concerns and the facts supporting them, he fails to demonstrate that Miller had similar concerns about P.G.'s "skill set," as opposed to his diligence, conscientiousness or attitude. In the absence of such evidence, nothing rebuts Miller's testimony that she gave plaintiff an unsatisfactory rating, rather than formally disciplining him as she did P.G., because she believed plaintiff needed primarily coaching and "additional training," not discipline, and her intent was for plaintiff to "get better, improve his performance." (Def.'s LR 56.1(a)(3) Stmt., Ex. C, at 153:3-10, ECF No. 27-3.; Ex. L, ECF No. 27-4, at 52.)

---

[6] Plaintiff attempts to offer two other comparators, R.R. and T.P., but they were not disciplined for the same sort of critical performance issues as plaintiff, *i.e.*, for the failure to perform plumbing and electrical repairs and other core maintenance tasks in a timely manner, so they are not valid comparators.

Plaintiff does not attempt to explain why Miller would recommend additional training if her goal was to cause plaintiff to be laid off, nor has he provided details to explain what made P.G.'s performance issues so similar to plaintiff's that Miller could not honestly have chosen to take an alternative course of corrective action in his case. The closest he comes is to argue that the fact that plaintiff was not disciplined, unlike other engineers such as P.G., indicates that his unsatisfactory rating was premature and pretextual, but plaintiff points to no evidence of any Board policy that required a supervisor to formally discipline an employee before giving him an unsatisfactory performance rating, and the Court fails to see how the fact that plaintiff was not disciplined before he was given an unsatisfactory rating proves anything. That fact is as likely to indicate that P.G. and plaintiff actually suffered from very different performance issues that warranted different courses of corrective action as it is to indicate disparate treatment for the same performance issues. It certainly does not give rise to any inference of discriminatory intent, even if it is true that Miller's rating was harsh. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, No. 12 C 10150, 2015 WL 5439362, at *11 (N.D. Ill. Sept. 10, 2015) ("Plaintiff cannot establish pretext by simply arguing that [her employer] was mistaken about its assessment of her performance relative to [a comparator's] performance, or that [the employer's] decision was wrong.") (citing *Coleman*, 667 F.3d at 852).

To the extent Miller's treatment of other engineers reveals anything about whether she had any discriminatory animus, it tends to show that she had none: Miller gave high ratings to other engineers near plaintiff's age. The only other Chief Engineer who Miller supervised in 2013 was only a year younger than plaintiff, and he received an "excellent" rating from Miller. The only engineer who received an "outstanding" rating—the highest rating—from Miller was

55 years old, only six years younger than plaintiff.[7] Miller herself was approximately the same age, only about five years younger than plaintiff. All told, Miller supervised fifteen engineers who were over forty, and plaintiff was the only one who received an unsatisfactory rating.

No jury could reasonably infer, based only on the unadorned fact that P.G. may also have struggled to repair water fountains and perform other maintenance in a timely manner but did not receive an unsatisfactory review in 2013, that Miller's unsatisfactory rating of plaintiff's performance must have been based on an intent to discriminate on the basis of age, in spite of all the evidence providing a factual basis for Miller's criticisms of plaintiff's performance, and in the absence of any substantial evidence that Miller had any discriminatory animus against older engineers such as plaintiff or that she lied about plaintiff's performance issues.

In short, considering all the evidence as a whole, a reasonable juror could not conclude that plaintiff would have kept his job if he were younger. Even if plaintiff can make out a *prima facie* case, the Board has provided legitimate, non-discriminatory reasons for laying plaintiff off, and the evidence does not support any reasonable inference that the Board's reasons are pretextual. Further, there is no genuine issue of fact as to whether age caused plaintiff's unsatisfactory performance rating or his selection for layoff. The Board's motion for summary judgment is granted as to plaintiff's discrimination claim.

## II.   RETALIATION

Plaintiff claims that he was terminated in retaliation for filing the Dyett lawsuit. "The ADEA provides that it is 'unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or

---

[7] The Seventh Circuit has said that such a short age gap is "presumptively insubstantial" for ADEA purposes, and plaintiff has offered no other evidence to rebut the presumption of insubstantiality. *See Hartley*, 124 F.3d at 893 (plaintiff could not make out a *prima facie* case based on comparators who were only six or seven years younger); *Bennington*, 275 F.3d at 659 (plaintiff could not make out *prima facie* case based on comparator who was only five years younger).

because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.'" *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001) (quoting 29 U.S.C. § 623(d)).

Plaintiff's retaliation claim is principally based on three statements Miller allegedly made to him: (1) Miller's alleged statement in January 2013 suggesting that she thought it was unlikely plaintiff would keep his job after filing a lawsuit against his employer (Def.'s LR 56.1(a)(3) Stmt., Ex. B, Pl.'s Dep., at 45:24-48:13), (2) Miller's May 2013 statement to the same effect (*id.*, Ex. B, 53:06-54:24), and (3) Miller's statement, after giving him his performance rating, that she had told him he "wasn't going to get away with that," or "You thought you were getting away with it. See what I'm saying?" (*id.*, Ex. B, 97:13-98:5; Pl.'s LR 56.1(b)(3)(C) Stmt., ¶ 24, ECF No. 38-3).

The Board argues that these vague statements (which Miller denies making) are not enough to create a genuine issue of fact as to whether plaintiff was laid off due to retaliatory motives. According to the Board, the first two statements do not indicate that Miller was angry with plaintiff or that she intended to take any action against him. The third,[8] allegedly uttered while Miller was giving plaintiff the unsatisfactory performance rating, meant that plaintiff was receiving a negative review as a consequence of his poor performance, and therefore he was not "getting away with" poor performance; it did not mean that he was receiving a poor performance review as payback for filing the Dyett lawsuit.

The Court agrees that these three statements are insufficient to create a genuine issue of fact. The first two statements were made weeks or months in advance of the June 2013 performance rating and had nothing to do with it. There was nothing in Miller's third statement

---

[8] The Board understands plaintiff to be alleging that Miller made two different statements about "getting away with it," but the Court understands plaintiff to have simply rendered the statement slightly differently in his declaration than he did at his deposition. Either way, the Court's analysis and conclusion is the same.

or its immediate context to connect the statement or the unsatisfactory review that accompanied it to the first two statements or to the Dyett lawsuit, nor does any other evidence in this case suggest that the third statement should be interpreted to refer to the Dyett lawsuit.  Plaintiff has introduced no evidence to explain why Miller would have any reason to retaliate against plaintiff for filing the Dyett lawsuit or for complaining about age discrimination generally (especially considering that Miller was only five years younger than plaintiff).  Miller was not the supervisor plaintiff complained of in the Dyett lawsuit, she did not work for the Board at the time of the events plaintiff complained of in the Dyett lawsuit, and there is no evidence that there would be any adverse consequences to her if plaintiff prevailed in the Dyett lawsuit.  She apparently had no personal or professional stake in the matter.

Moreover, most of the above analysis of plaintiff's discrimination claim applies to the retaliation claim as well.  Plaintiff has not demonstrated that Miller had any discriminatory animus against older workers; in fact, her own age and her treatment of other engineers near plaintiff's age tend to indicate that she has no such animus.  He has not demonstrated that Miller had any knowledge that engineers would be laid off in 2013.  He has not demonstrated that she was even generally aware that, by giving plaintiff an unsatisfactory rating, she made him vulnerable to being selected for termination in the event of a layoff.  And even if she was aware of it, plaintiff has not demonstrated that the unsatisfactory rating he received was based on anything other than Miller's honest assessment of his performance; in other words, it was a legitimate, non-discriminatory, non-pretextual reason for selecting plaintiff as one of the engineers to be laid off.

Cases are "legion" in which a plaintiff has only one "bit or piece" of evidence of retaliatory intent, rather than many "bits and pieces" which, considered as a whole, might be

20

arranged to support a reasonable inference of retaliation. *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013) (citing cases). In particular, "ambiguous or isolated comments that stand alone are insufficient." *Id.* (citing *Fleishman v. Cont'l Cas. Co.,* 698 F.3d 598, 604-05 (7th Cir. 2012) (absent age-related context, ambiguous comment that manager was "out to get" plaintiff could not overcome summary judgment on plaintiff's age discrimination claim)). Even considering the evidence in the light most favorable to plaintiff, this is a case in which plaintiff has no more than an ambiguous statement standing alone, which is insufficient to support a reasonable inference of retaliation.

## CONCLUSION

For the reasons set forth above, the Court grants defendant's motion for summary judgment [24]. Civil case terminated.

**SO ORDERED.**                                    **ENTERED: September 6, 2016**

**HON. JORGE L. ALONSO**
**United States District Judge**